I appreciate everyone being here given the weather activity. We'll begin the argument in Schwartz v. Rent A Wreck. Mr. Janssen? Good morning. It may please the court. My name is Dan Janssen. I'm from the Quarles & Brady Law Firm in Milwaukee, Wisconsin. My clients this morning are Rent A Wreck of America Inc. and Bundy American LLC. With the court's permission, I will refer to them for convenience together as Rent A Wreck and I will refer to the appellees as Mr. Schwartz. Before I begin, I want to thank the court for agreeing to hear this case a second time. It was almost three years ago to the day that the parties were before this court. It was a privilege to appear before this court in 2012 and it's a privilege to be here today. This morning, the most important case law authority happens to be this court's first decision following the first appeal between the parties. Argued on January 26, 2012 and issued on March 9, 2012, it's plain meaning of this court's decision is what is at issue today. At the time of the first appeal, this court was dealing with an appeal following an April 2010 jury trial to the district court. At issue in the first district court trial was the nature of the relationship between Rent A Wreck and Mr. Schwartz. Following that first jury trial, the jury defined the relationship between the two as having five elements. That it was a franchise with an exclusive territory where Mr. Schwartz had the same franchise obligations to Rent A Wreck as other franchisees with the exception of the payment of royalties and the duration of the franchise for Mr. Schwartz's life. Following the jury trial on motions after verdict, the district court upheld three of those jury findings. The district court upheld the findings that there was a franchise contract that was exclusive for the lifetime of Mr. Schwartz, but the district court overturned two of the jury's findings. Namely, the jury's finding that Mr. Schwartz had the same obligations to Rent A Wreck as all other franchisees and overturned the jury's finding that Mr. Schwartz was obligated to pay franchise fees to Rent A Wreck. Now, insofar as the district court's rulings after verdict were concerned, the issue before this... ...violated California antitrust laws, and that's what we asked the district court and the jury to do, and that's what they did. And I don't understand why all this lengthy discussion of the activities prior to the first appeal has much relevance to what we asked the jury to do. Well, and that is the issue today, but a single issue was remanded by this court to the district court, the single issue of whether the exclusive territory foreclosed competition. But importantly, the district court took upon itself not only to conduct that jury trial, but also to exceed its mandate and to make rulings that are embodied in at least four of the orders that are part of the record beyond the mandate. Namely, the district court determined that it should itself define what those obligations were and the nature of those obligations. It was a very simple issue. The jury found that Mr. Schwartz owed obligations. The district court overturned that finding, and it was reinstated by this court. When it was reinstated by this court in its opinion of March 9, 2012, there was nothing further for the district court to do other than conduct this jury trial. When it went back, you introduced a new agreement or proposed new agreement and an operating manual and filed another counterclaim and things like that. Well, it's not so much a matter of introducing another agreement. Rent Direct was simply exercising its rights that were granted to it by this court. This court said the jury made the correct decision. That is, Mr. Schwartz owes the same obligations to Rent Direct as all other franchisees. All other franchisees signed franchise agreements. It is the written franchise agreement that embodies those obligations. So taking advantage of the relief granted by this court, Rent Direct simply presented its franchise agreement to Mr. Schwartz, asked him to sign the franchise agreement as it does with all other franchisees, and advised him that it expected Mr. Schwartz to honor these obligations with two exceptions. The two exceptions noted by the jury, the payment of franchise fees and the duration of the franchise for the life of Mr. Schwartz. I don't want to interrupt your answer, but there is one thing that it would help me if you would clarify. You said that the district court took it upon itself to issue an order concerning the nature of Schwartz's obligations to Rent Direct. Did I understand you correctly to say that? Yes, but more than one order. Bear with me, please. I wanted to know, is there an order in which the district court did that that was not suspended? Is there an operative order in which the district court defined the obligations that Schwartz owed to Rent Direct? The district court began doing that in a series of four orders. The first, beginning in the order of January 23, it's in the joint appendix at page 499, and ending with the court's memorandum of July 19, 2013. That's in the joint appendix at page 914. In each of these four orders, the district court began describing the conditions and limitations that it would apply to the obligations that Rent Direct was going to and for some Mr. Schwartz. It seems to me, though, that perhaps you are answering my question no, because I couldn't find an order in which the district court imposed terms and conditions, specific terms and conditions on Schwartz that it didn't suspend as part of its order until after oral argument in 2013, when the district court, in accordance with both the parties' wishes, canceled oral argument and closed the case. I mean, there are certainly memoranda in which the district court discusses the issue. But I'm trying to find out, and I'm actually trying to understand, is there a definitive order? Well, the definitive order suspending Mr. Schwartz's duty to have obligations to Rent Direct is February 28, 2013. That's in the joint appendix at page 556 and continuing on 557. The court uses the term suspension. Now, thereafter and after the jury trial, the district court continued to assert that it had the jurisdiction and the authority to define the obligations that Mr. Schwartz owed to Rent Direct. And Rent Direct continued to object and to object to the briefing schedule and the hearing that had been set in September. Are you appealing that? I mean, are you appealing any particular condition? The district court suspended Mr. Schwartz. But you're not appealing any particular obligation that the district court did or didn't impose on Mr. Schwartz vis-à-vis the other franchisees. Well, I am because the district court suspended those obligations in its order of February 28, 2013. According to the district court, Mr. Schwartz has no obligations to Rent Direct. That's the reason why we're here. The district court should never have engaged in this exercise in the first place. The first jury, it's a verdict upheld by this court, held that Mr. Schwartz has the same obligations to Rent Direct as all other franchisees. At that point, at the time that this court affirmed the jury's finding, there was no further action to be taken by the district court. Where did the district court hold that Schwartz had no obligations to Rent Direct? I thought on remand, the court entered an order declaring Schwartz subject to the terms and provisions in the 2011 agreement with certain exceptions. Now, it ultimately suspended that order because you were supposed to go to oral argument in September 2013. But it canceled the oral argument because the parties so requested. Because the court was engaging in a process that it had no authority, no jurisdiction to do in the first place, and that includes the January 23, 2013 memo. The court had no jurisdiction to even make the finding that the franchise agreement of 2011 was effective, and in that same order hold that it is effective except to the extent that Rent Direct may unduly pressure Mr. Schwartz. The entire exercise... If I may, then in response to Judge Wilkinson's question, specifically, what order are you appealing? Well, I am appealing four orders, the January 23, the February 28, the May 17, and July 19 orders. All four involve the exercise, the inappropriate exercise of the district court beyond the mandate rule to define and describe and limit the scope of Mr. Schwartz's obligations to Rent Direct, which the district court had no authority to do. The only thing the district court had the authority to do was to conduct a jury trial on the issue of whether there was a foreclosure of competition based on the exclusivity of Mr. Schwartz's territory. Are you complaining about that jury trial and the result of it on appeal? Yeah, there were two problems with that. The first was that the district court misallocated the burden of proof, number one. Okay. And the second is that the district court inappropriately before trial ruled that Rent Direct could not present its theory of the case on substantial foreclosure of competition. That was it, whether there were any other Rent Direct franchises in the territory. The judge defined the market as a rental car, right, which is what you all alleged in your complaint. The one you filed after remand. You filed a amended complaint or counterclaim and said it was a rental car. And then when you got up to the day of the trial, you changed it. Said, oh, it's not rental cars, judge. It's whether Rent Direct franchises. Well, he said, well, if we do that, we don't need a trial. And so then the jury ruled against you. That final order is August 23rd, 2013. You're not appealing that? That's the final order in judgment on remand. That's not one of the orders that you claim you're appealing. That's the one you have to appeal, I thought. Well, I believe we are appealing that final order as well. But the problem is that the court mischaracterized Rent Direct's theory. Rent Direct did define the line of commerce as rental cars between two and eight years old. It wasn't the sale of franchises in the territory. And in the record, and I can get you the specific number in the appendix, we have the expert's report that was excluded. But the problem is I believe that the district court mischaracterized Rent Direct's theory. All right. We have some rebuttal time. Thank you. Thank you. Seven. Thank you, Your Honor. I'm Roger Simmons. I represent Dave Schwartz. Been through two trials for him. My capable colleague here, Jake Weddle, has been through those trials with me, argued the first appeal, and I'm here to try to answer any questions the court may have. One question I want to get to as quick as I can, Your Honor, is Mr. Jansen's assertion that they didn't change the theories. Judge King, you're absolutely right. If you look at appendix page 559, you will see the amended counterclaim that laid out their theory, which was in accord with the mandate that Judge Duncan wrote in the opinion that the panel adopted. But the day before, or not the day before, but weeks, a couple of weeks before trial, a pretrial order was submitted by Mr. Jansen and his clients that changed that theory in appendix 790 to the line of commerce in this dispute being the sale of Renorec brand franchises for renting and leasing used motor vehicles that are less than eight years old. And that's what the trial court had a problem with. In this case, the mandate never was about the sale of franchises within West L.A. It was about the foreclosure or non-foreclosure of rental car leasing efforts in L.A. We have a demonstrative... He's claiming that the district court violated the mandate rule by inquiring, by the simple act of inquiring into the obligation that the other franchisees had toward Renorec. And what do you say about that? Your Honor, as the court recognized in the first opinion, this is a somewhat unorthodox situation. David Schwartz never signed a rental agreement. As Judge Duncan noted at page 242 of the original opinion. He never signed an agreement. The 2011 document was never issued. Does that matter? I mean, we found that there was an implied contract through the course of dealing, so I'm not quite sure. There was an implied contract, Your Honor. Well, could you respond? I share Judge Wilkinson's question, and I was wondering if you could get to that. That being the obligations? What the district court asked about on remand. The jury in 2013 indicated that Renorec has the right to exercise some control over Schwartz, right? As is necessary to protect its trademark trade name, Goodwill. And it also found that Schwartz's exclusive territory does not foreclose competition in a substantial share of the marketplace. So that's where we are after the jury. And I was going to try to answer that question with this point, Your Honor. I apologize for stepping in before I should have. The trial, the second trial, was a free and open trial on what was required of the different franchisees. There was extensive evidence introduced on whether, in fact, Renorec actually required the things that it tried to impose in this new contract, this new written document that had never been a part of any relationship with David Schwartz. It tried to impose that on him, asserting that these things were required of other franchisees. And in being tested, we found that no other franchisee was ever required to do those kinds of things. It seems to me that perhaps your best argument goes back to what Judge Duncan was asking, proposing counsel earlier. And that is, what is exactly, what is really before us on appeal? And this whole idea of what obligations other franchisees owe, or what agreement controls those other obligations, is all in a very vague situation. Exactly. So what is really at stake here is whether this individual has the right to exercise his exclusive franchise. And basically, what I understood, I wasn't on the panel, but what I understood the prior appeal to say, well, yes, he does, as long as there's no way any competitive effect under antitrust law or California law. And that question was answered by the jury, and it's hard to see how the jury's answer was erroneous, because the Western Los Angeles rent-a-car market has got to be vast, unless you try to narrow it to rent-a-wreck franchises, which he would be the only one, and by definition of monopolization. And we couldn't have intended that, because that would have been amenable to a judgment as a matter of law, rather than a jury trial. But what we're, as I understand it, what's really before us in real-world terms is whether this gentleman gets a chance to exercise a royalty-free exclusive franchise in a vast market. The jury seemed to return a verdict saying, yeah, there's no anti-competitive effect under California law. There was evidence taken as to the market and to the number of rent-a-car operations and the rest. And, you know, sending it to the jury on that issue and having the jury answer, it seemed to me exactly what our earlier opinion was as to this other issue about obligations. You know, if it's not a red herring, I don't know what it is, but it certainly is up here, if it is up here at all, in a very vague and unsuitable way. And I come back to Judge Duncan's question, because I can't get my arms around this same obligations question, because I don't really have a judgment or a judgment order or a specific sense of what the obligations are or whatever. That was never part of the trial? It was never put to the jury, never found by the judge? Well, I don't know that that's correct. To some extent, as a result of our last opinion, we said the same obligations with the two exceptions, the lifetime, as other franchisees. And the jury found that, yes, RENEREC has the right to exercise some control, as it would over other franchisees, to protect its trade name, et cetera. But that still leaves what is the nature and extent, what are those obligations and responsibilities. And it's hard for me to see where, it seems to me that that didn't necessarily flow from our prior opinion. And I'm having trouble finding a place where the district court spoke definitively to it. Your Honor, what the jury found is, my understanding of what it was, was that the relationship that existed between David Schwartz and the now entity was such that it exercised and had, in the past and throughout the history, exercised enough influence on David Schwartz's operation to protect its mark. In fact, he was, in the words of the PR guy for RENEREC itself, who was a witness to Mr. Jansen at the trial, David Schwartz was a goodwill god to the industry because he made people happier renting RENEREC cars than any other franchisee. And he was doing nothing to impact or hurt or harm the trademark. And the influence they had on him was one of day-to-day contact, day-to-day discussion, day-to-day influence. But as to the actual terms, can you go in and audit his books where he doesn't have any obligation to pay fees? Can you require him to spend $5 million in 30 days to increase your fleet size in L.A.? No, they didn't say that he had that obligation. I think you're actually agreeing with me. I mean, I think actually we're saying the same thing, that there was some control necessarily flowed. There were some controls, and the jury found sufficient. But the question was, what was the nature of that control? But that issue was never put in this trial, in this appeal, or in this mandate. Well, not yet. So you're agreeing with me, or you're saying that you don't, you can't identify a document or order that spells that out? But it never found its form in the document. It never found its form. And as Your Honor noted, it was a contract, an applied contract, that grew out of a course of dealing over years. No, no. David Schwartz never signed an agreement. That's not my question. My question is what the district court ordered or what was resolved post-June 2013. By agreement of both parties, we ask him not to do that. One of the things is, with my difficulty with the lack of concreteness of the same obligations question, if he violates, if Mr. Schwartz violates what Rennerecht thinks is an obligation, then they would have every right to bring a breach of contract action or a breach of implied contract action or something of that nature. But then we would have a situation where they had been, we say they're subject to the same obligations. And it seems to me, rather than having the district court maybe spell that out in the abstract, that it would be best to leave it to the fact that if he violates what they think are their obligations, then Rennerecht going forward would have a right to, we've set the parameters. And as to the specifics, why wouldn't that await a future breach of contract action if there's some dispute at some future date over compliance with the obligation?  I mean, why do we have to wrap all that up here or remand it and have a third appeal, which we would have? Please know, but I don't believe that's necessary. There's no ongoing dispute on that at this point. There's no case that puts it in concrete we can look at it. There's no ongoing dispute as to what? As to the nature of his obligations, because as the jury found, looking at the conduct and the obligations imposed upon other franchisees, they had sufficient control over this man and exercised sufficient control over this man to protect their mark. And he would develop the true- But whether he violates, it's clear he's subject to those obligations. But whether he violates those obligations and what obligations they are, I don't know that I can tell at this point. And it would seem to me to have to await some concrete violation and somebody bringing a breach of a cause of action for breach of contract or breach of implied dealing or what have you. I just don't know that it's a, that we can, that either we or the district court ought to be doing that in the abstract until there's some dispute between the parties of a violation. Judge Wilkinson, you have it exactly right. At this point, the only thing that was resolved was the actual mandate. Was there, what the market was, was the leasing of rental cars in L.A., West L.A. and was that exclusive right an antitrust or a car right violation in California? Those two issues were resolved. We're back here with the claim that somehow that mandate was not followed. It was followed to the letter. The jury verdict form, which your honors will find at page 902 of the appendix, is in the literal words of this court's opinion and directed back on remand. The fact we have here is it is an implied contract. It wasn't something that someone created in 2011. It was something that was created in mid-1970s and for 40 years after that, there was a relationship that grew out of the implied and ongoing course of dealing that went forward between 1974 and 2013 when the trial was had and now 2015, 41 years later. If there is no question about the nature of the obligations, are you agreeing that it seems to me that you're conceding that you would be bound by the obligations in the 2011 franchise agreement? No, no. But that's part of the problem. No, no. Let me finish. I'm sorry. Apparently, there is a 2011 franchise agreement. What is this now? Please don't interrupt me. It seems to me that there is some standard out there that defines, there is, the 2011 franchise agreement that sets forth obligations that RENEREC claims that Mr. Schwartz is obligated by. It would seem to me that there is a question about the applicability of those obligations across the board, given, or there could be a question about the applicability of those obligations across the board, given that the court said that the obligations and responsibilities would be the same. The court didn't quite say that. It said if he wanted the same benefits, then he had to comply with the obligations. But the evidentiary record was different than that. The evidentiary record was that none of the other franchisees, in fact, followed anything in that 2011 document they were trying to use to terminate him. Is that the purpose of all those pictures and things you all put into the appendix? Yes, Your Honor. They made the claim. Where you had people renting Bensky trucks at the same place and you sold used cars? Yes. At the same, as the RENEREC, and they did everything? Yes. The franchisees across the country did everything they claimed was contrary to what they wanted to force Schwartz to do. And the guy they put up as the sole source of evidence was a man who had not visited any franchise except Dave Schwartz's, had done nothing to it. What the rental car market was in West Los Angeles. No, but it had to do, Your Honor, with whether or not- You had to hear from Greensboro, North Carolina, up in New York State. What it had to do with was, was he doing and required to do what was necessary to protect the market as other franchisees. And that's the case and why it was relevant. It was the first of the two questions. And that's how it got going. I don't want to take the course of time if there are no more questions. Thank you, Judge Duncan. I apologize again for, I think I understand where you're going. I tried to answer it before you've articulated it. My sincere apologies. I did not mean to be disrespectful. Well, I appreciate that and I'm sorry to have bombarded you with questions. Oh, that's why I'm here. And I apologize, Your Honor. Mr. Hanson, you can answer the rebuttal. I believe the point that you made, Judge Wilkinson, in your question of opposing counsel is the right one. And that's what should happen here if there is a dispute between the parties on what actually the obligations are. And if that dispute arises, then Mr. Schwartz would do what any aggrieved party would do if the facts support it, which is to file a new lawsuit and claim that there is a breach of contract. And then in that dispute, the parties might differ on what are the terms of the contract and were the terms of the contract followed. The important point was this was not for the district court and for Judge Massetti to treat the jury's verdict as if it were a permanent injunction over which he had the authority to act as a referee of disputes between Rent-a-Rec and Mr. Schwartz indefinitely. Is there any dispute that, as a result of our prior opinion, that Mr. Schwartz is subject to the same obligations as other franchisees and that he's not just free to run around with an exclusive franchise and have no obligations with respect to the Rent-a-Rec? On the general parameters of the problem, I don't know if there's any dispute. It's just the concrete question of violation. I just wonder whether, I mean, either party could bring a breach of contract action at some point in the future if they felt that their rights were being violated, given how litigious they are. I don't know whether that will happen or not, although this is the second time that we are before this court. But what I will tell you is the procedure you describe is absolutely appropriate for the next litigation, if there is a piece of litigation. What I know with certainty is the district court didn't have the jurisdiction or the authority to start sorting through those issues in advance, which is exactly what happened in July 19, where the district court determined that it would start determining for itself, with no particular standard, the fleet size, whether Rent-a-Rec should have the ability. But it stopped. It stopped, right? I mean, it canceled the oral argument into which it was going to go into those details. Everything you say is making perfect sense. Help me understand, what precisely do you want us to do with this appeal, the appeal that's currently before us? How do we get to the point that there seems to be some consensus would be useful, that is a breach of contract action? What becomes of this appeal? We have appealed the final order of judgment on remand. That's in the appendix at 924, as described on the first page of our brief. The orders leading up to that final judgment on remand are those that are described in the last page of our brief, and those orders should be vacated. As we sit here today, based on the district court's rulings leading up to the final order of judgment, a ruling has been made that Mr. Schwartz does not have the same obligations as every other franchisee. Where is that ruling in the record? Where did the district court do that, in your view? That is the suspension of the earlier orders on February 28th, and the district court then acting on its self-appointed grant of authority in the orders that follow. What practical effect any of this, I mean, maybe there was some thrashing around, but what practical effect did it have? I mean, you know, people go down blind alleys all the time, and, you know, what, as he was, I mean, he was making these inquiries and everything, but you can argue about whether he should have been making them, but what practical effect did it all have, just on your client right here and now? Well, the practical effect is we have a district court that has ruled, in our view, that it has the continuing authority to act as a referee in disputes between Mr. Schwartz and Rent-A-Rec, and all I am asking this court to do is to confirm that the issue was answered once and for all by the first jury, that there was reasonable evidence for that jury's conclusion as affirmed by this court in its first appeal, and there is nothing further for the district court to do. Everything that the district court did leading up to that final order of judgment on remand, which we have appealed, was beyond the scope of the mandate rule. He tried the very issue we sent back, and they found it against you, about the rental car market in West Los Angeles. Well, but that is... That was what we sent back to try that, and they tried it. You know, you tried it, and you say, allocated the burden of proof wrong, but you don't complain much beyond that. It sounds to me like there is a lot of egos involved here, and people don't talk to each other, or lawyers don't deal with each other. You are supposed to submit a joint pretrial order, and you submitted... Each submitted their own. You wouldn't even talk to each other. You want us to settle it now. The part of what you're concerned about is the nature of the respective obligations, and you think that the district court should have left that part alone. There was nothing more to do. I have no problem. My client has no issue with the fact that there was a second jury trial as this court ordered the district court to do. It conducted a jury trial, and the jury issued its form of special verdict. At that point, are you willing to accept the fact that you lost, and that that jury trial was conducted in an appropriate manner? No, because we are appealing that jury trial in two respects, and we're asking for a new jury trial because of, number one, the misallocation of the burden of proof, and number two, the fact that the court made the mistaken ruling that as a matter of law, Rent-a-Rex theory... If we try to sketch out and flesh out... This goes to show how litigious it's going to be forever. If we try to sketch out and flesh out what the obligations are on this appeal without any concrete breach of contract action as the foundation or any concrete violation, there's going to be another argument over the scope of the opinion and the mandate and the rest. I'm just afraid we'd be coming close to writing the party's contract for them, which is a very difficult thing to do given that there are various agreements which might or might not apply and given the fact that there are implied courses of dealing involved. And the rest, I'm just thinking, this is very hard for us to do. I think it would be a nightmare for the district court to try to do in the way that the present case is at too abstract a level. If these parties have a contract and an understanding between them, then if that understanding is violated, let it come before court, it's probably a state court at that point in time. But sometimes if people try to get us to do too much in an appeal, to simply write an essay, I don't know that that's a good idea. May I respond even though I'm over time? I agree with absolutely everything you just said. This court and the district court should not rewrite the party's agreement. The jury has already defined the party's agreement. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Robert B. King, Allyson K. Duncan